TOWN OF DARTMOUTH *vs.* GUILHERMINA C. SILVA & others.

Bristol.   October 28, 1949. — March 3, 1950.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Water. Nuisance. Way,* Public: obstruction. *Municipal Corporations,* Highways. *Equity Jurisdiction,* Nuisance. *Equity Pleading and Practice,* Counterclaim, Decree.

A town could maintain a suit in equity to enjoin an owner of land from obstructing and diverting a natural watercourse on his land and thereby causing water to "flow or spill over" town ways and exposing the town to the hazard of incurring special or peculiar damage through expense in repairing the ways or liability to travellers, although the town did not show that it had actually incurred any such damage.

A final decree in a suit in equity, besides granting suitable relief to the plaintiff, should have dismissed a counterclaim by the defendant seeking relief to which he was not entitled on facts found.

BILL IN EQUITY, filed in the Superior Court on November 4, 1947, and afterwards amended.

The suit was heard by *Kirk*, J., on a master's report.

In this court the case was submitted on briefs.

*J. F. Francis & G. T. Law*, for the defendants.

*G. H. Young*, for the plaintiff.

SPALDING, J.   The town of Dartmouth alleges in its bill that the defendants have wrongfully filled in the bed of a natural stream so as to obstruct and divert its flow.   Because of such obstruction and diversion, it is alleged, floods have resulted "which have interfered with travel by the public on the ways of the town," nearby properties have been overflowed and rendered unfit for use, adjacent road-ways have been washed out (thereby causing expense to the plaintiff for their repair and maintenance), the breeding and prevalence of mosquitoes in the area have been accentuated, the health of the residents in the community has been endangered, and a nuisance has been created.   The plaintiff asks that the defendants be restrained from obstructing and diverting the stream, and that they be ordered to remove the existing obstructions.   The defendants in their answer deny these allegations, and by what is in effect a counterclaim (although not designated as such) allege that the plaintiff has illegally and to their great damage diverted accumulations of surface water over their properties; they ask for injunctive relief.

The case was referred to a master under the usual rule. Rule 86 of the Superior Court (1932).   An interlocutory decree was entered confirming the master's report and over-ruling the defendants' exceptions to the report.   The findings of the master include the following: The defendants Guilhermina C. and Mary Silva, husband and wife, own two lots of land in the vicinity of Prospect Street in the town of Dartmouth.   The defendants Joseph V. and Annie M. Bettencourt, husband and wife, also own land in this vicinity. Originally the property owned by the defendants was a part of a large tract of farm land.   In 1913 this land was subdivided and streets were laid out, "among which were Prospect, Merrimac and Pearl where the several lots [which are] the subject of this controversy are located."   Prior to

1913, and for some time subsequent thereto, the area included in the subdivision was sparsely settled. "There were three main thoroughfares used for travel at that time, viz: Dartmouth Street, Rockland [Street] and Sol-E-Mar Road." There is an underground ditch equipped with catch basins in Dartmouth Street, and a culvert runs across Dartmouth Street into a swamp comprising eight and one half acres which borders on both sides of Sol-E-Mar Road. The swamp and the surrounding area are drained by a brook which "meanders until it comes to Prospect Street." At that point it passes under Prospect Street through a culvert, flows through lands of the Silvas and the Bettencourts, and continues on into the Atlantic Ocean. This is a "well defined brook which has been there for many years" and it drains and "carries off the surface waters from the slopes in that area."

The Silvas "diverted the course and filled in the bed of this brook or natural stream from where it ran through . . . [the] culvert under Prospect Street." As a result of what the Silvas did, the Bettencourts, whose land was below the Silvas' property, "also caused the bed of the . . . [brook] running through . . . their land to be filled in and diverted in another direction, thereby causing the flow of the waters therefrom to become obstructed and flow or spill over the town ways." While the Silvas and Bettencourts through "their actions have caused the waters ordinarily flowing through said watercourse to spill and overflow onto the town ways, and property owned by other inhabitants of . . . [the] town," the master was "unable to find any specific damages on account thereof as there was no·evidence submitted to . . . [him] in relation" to this matter.

A final decree was entered enjoining the defendants from further obstructing or "rerouting the flow of the waters of the brook running through the properties of the several defendants, from its original and natural course." The decree also ordered the defendants to remove all existing obstructions from the brook. The defendants appealed. Since no questions touching the report of the master are before us,

the question to be decided is what decree ought to be entered on the facts found by him. *Zuckernik* v. *Jordan Marsh Co.* 290 Mass. 151, 156. In so deciding it is our duty to draw the proper inferences from the findings of the master unaffected by the conclusions of the judge. *Greeley* v. *Flynn,* 310 Mass. 23, 26.

The plaintiff grounds its right to relief on the existence of a nuisance. We construe the findings of the master as establishing that the brook which ran through the land of the defendants was a natural watercourse. See *Luther* v. *Winnisimmet Co.* 9 Cush. 171; *Stanchfield* v. *Newton,* 142 Mass. 110, 116; *Yaskill* v. *Thibault,* 273 Mass. 266, 268–269. The obstruction of a watercourse so as to cause the water to flow over a highway is a public nuisance. *Com-monwealth* v. *Stevens,* 10 Pick. 247. *Commonwealth* v. *Fisher,* 6 Met. 433, 437. *New Salem* v. *Eagle Mill Co.* 138 Mass. 8. "An information in equity by the Attorney General is the normal remedy for the abatement of a public nuisance." *Mayor of Cambridge* v. *Dean,* 300 Mass. 174, 175. *Attorney General* v. *Jamaica Pond Aqueduct Corp.* 133 Mass. 361, 363. *Attorney General* v. *Boston & Albany Railroad,* 246 Mass. 292, 296. But where a town in its corporate capacity has sustained special or peculiar damage it may bring a suit to abate the nuisance. Thus, where the interference with a public right of way is of such a nature that a town may be put to expense in repairing the way, or may be liable for damage sustained from its obstruction, it has been held that such a suit may be maintained by the town. *Springfield* v. *Connecticut River Railroad,* 4 Cush. 63, 67–68. *New Salem* v. *Eagle Mill Co.* 138 Mass. 8, 10. See *Andover* v. *Sutton,* 12 Met. 182, 189; *Needham* v. *New York & New England Railroad,* 152 Mass. 61, 63. In *Springfield* v. *Connecticut River Railroad* the town sought to restrain the defendant from running its trains over a track laid on a public highway on the ground that such maintenance of the railroad was unauthorized and constituted a nuisance. It was contended that the town had no such interest in the preservation and protection of the highways as would en-

title it to apply to a court of equity to restrain and prevent such nuisance. This court per Shaw, C.J., said, "we are inclined to think, that as the town is responsible for the construction and amendment of highways and town ways and for damages to travellers for losses occasioned by obstructions and defects, they have a right to invoke the equity power vested in this court, in cases of nuisance, to determine whether such a use of the ways, as is claimed by the defendants in the present case, is or is not a justifiable act under the powers granted them" (pages 67–68).

The reasoning of that case, we think, supports the present suit. A town is under a duty to keep its ways in repair and is liable to travellers injured by reason of a breach of that duty. G. L. (Ter. Ed.) c. 84, §§ 1, 15. The obstruction and diverting of the watercourse in the present case have caused water to "flow or spill over the town ways." That the master found that specific damage was not proved is not fatal to relief. It is not unreasonable to infer that if the flooding continues the plaintiff may be put to expense in repairing the way, and that the risk of liability for damage may be increased. The plaintiff should not be required to wait until it has incurred such expense or liability before it can have a remedy. For decisions in other jurisdictions supporting this result see *Burlington* v. *Schwarzman*, 52 Conn. 181 (maintenance of fence in highway enjoined); *Merritt* v. *Harp*, 131 Mich. 174 (flooding of highway enjoined); *Montpelier* v. *McMahon*, 85 Vt. 275, 281 (erection of piazza over sidewalk enjoined).

The defendants argue, in substance, that the plaintiff is wrongfully collecting in catch basins large quantities of surface water on Dartmouth Street and is discharging it through the culvert into the swamp, thereby increasing the flow in the brook and causing it to overflow its banks. They seek "an appropriate decree restraining the plaintiff from discharging . . . [this water] upon their properties." It is true that liability may be imposed upon a town where its agents cause surface waters to be collected and discharged into a natural watercourse in such volume as to

overload it and cause damage to the adjacent land. *Ryder* v. *Lexington*, 303 Mass. 281, 288, and cases cited. *Wishnewsky* v. *Saugus*, *ante*, 191, 193. But there is nothing in this record to show that the surface water collected by the plaintiff and discharged into the swamp had any appreciable effect on the volume of water in the stream. The master found that the "principal source of the water in the brook was from surface drainage from the area which slopes toward the Atlantic Ocean."

The interlocutory decree is affirmed. The defendants' counterclaim should have been disposed of (see *Mitchell* v. *Carrell*, 321 Mass. 453, 455) and the final decree is to be modified by providing that it be dismissed, and, as so modified, the decree is affirmed with costs.

*So ordered.*