JAMES DIMARE & another *vs.* GENNARO CAPALDI & another.

Middlesex.   October 9, 1957. — December 11, 1957.

Present: WILKINS, C.J., WILLIAMS, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Damages,* For breach of contract.  *Contract,* Building contract, Performance and breach.  *Equity Pleading and Practice,* Master: findings, exceptions to report; Variance; Rehearing.  *Evidence,* Relevancy and materiality.

Exceptions to a master's report on the ground that certain findings were not supported by the evidence were not to be considered by this court in the absence of any summaries of evidence properly obtained under Rule 90 of the Superior Court (1954).  [500]

A bill in equity was not to be dismissed on the ground of variance where the proof and findings, although not supporting certain allegations in the bill, were consistent with other, separable allegations.  [500–501]

If, in a suit in equity by a landowner against a builder involving a building construction contract between the parties, there were inconsistencies between a master's findings as to the plaintiff's justification for "calling off the contract" and the propriety of the defendant's "leaving the job," the materiality of such inconsistencies was not apparent in view of certain findings respecting serious deficiencies in the defendant's performance.  [501]

Rehearing of a suit in equity was not required where the subsidiary findings of a master, although lacking in completeness and clarity, were not so inadequate as to preclude a determination of the material issues involved.  [501]

Where a substantial part of the work under a contract for construction of a house was left undone by the builder and the work which he did perform was substantially defective, the landowner was entitled to recover from him the cost of completing the work and of repairing the defective work, less a portion of the contract price which the landowner had not paid to him.  [501–502]

The record in a suit by a landowner against a builder to recover damages for leaving undone part of the work under a contract for construction of a house and for defective work done did not show that a failure of the landowner to carry fire insurance on the house during construction in accordance with the contract was material or that exclusion of evidence of such failure by the landowner was error.  [503–504]

No error was shown by the record in a suit in admitting in cross-examination pleadings in another proceeding between the same parties.  [504–505]

BILL IN EQUITY, filed in the Superior Court on February 6, 1956.

Following the report of a master, interlocutory decrees denying a motion to recommit to the master and confirming his report were entered by *Swift*, J., and a final decree was entered by *Lurie*, J. The defendant Frank Capaldi appealed from all the decrees.

*Henry W. Hardy*, (*Paul S. Rich* with him,) for the defendant Frank Capaldi.

*John B. O'Hare*, for the plaintiffs.

CUTTER, J. The plaintiffs, by their bill for declaratory relief against one Frank Capaldi and his father, ask that the court determine (a) what persons are parties to a written contract with the plaintiffs for the construction of a dwelling in Belmont and (b) "the validity and construction of" the contract and "the damage sustained . . . by the fraud, negligence, improper and faulty construction, delay and improper materials, and the wilful and deliberate departure from the plans and specifications, in connection with the construction." The somewhat ambiguous contract for the construction of the house in about 120 working days recites that "many changes . . . have been . . . mutually agreed" and that the "specifications and plans will be used as a guide only." The agreed price was to be $35,500.

The bill alleged, among other things, that the "work was done in a slovenly and unworkmanlike manner by subcontractors of defendants' choice and the materials used were not according to specifications"; that "construction dragged on and was not completed in about 120 working days" (as required by the contract); and that in "many other respects, there was a deliberate . . . departure . . . from the requirements of the plans and specifications."

The case was referred to a master (to be heard with an action at law brought by the defendant Frank Capaldi against the present plaintiffs) to "find the facts and the subsidiary facts upon which his ultimate conclusions are based." Despite the terms of the order referring the cases

to him, the master filed a report which contained excessive recitals of evidence (see *Jameson* v. *Hayes*, 250 Mass. 302, 306–307; *Joyner* v. *Lenox Savings Bank*, 322 Mass. 46, 57–58; note to Rule 90 of the Superior Court [1932] at pages 280–281) and somewhat meager subsidiary findings of fact. To this report, Frank Capaldi (hereinafter called the defendant) filed some forty objections, but the defendant did not (see Rule 90 of the Superior Court [1954]) file any written request with any of his objections for a summary of the evidence relevant to such objections. A motion to recommit was denied and the report was confirmed. Appeals then were taken from the interlocutory decrees denying the motion to recommit and confirming the master's report and from a final decree[1] adjudging that the defendant is indebted to the plaintiffs in the sum of $7,750 with interest (see note 3, *infra*).

The master made the following findings, among others, (a) "that there was no substantial performance in good faith" by Frank Capaldi (specifying certain deficiencies); (b) that the payments made by the plaintiffs "were made promptly" and Frank Capaldi "was not justified in leaving the work which . . . he did not complete" (specifying the work which he did not complete); (c) "that under the circumstances" the plaintiffs were "justified in calling off the contract and taking possession of the premises"; (d) that Frank Capaldi is "responsible for the . . . reasonable costs . . . of completing the work . . . left undone" (specifying work in the aggregate sum of $2,397.26); (e) that the "list of defects [apparently referring to a table of defects stated in his recitals of the testimony] included above in detail are directly related to the failure of Frank Capaldi to build such of the house as he did build in a . . . workmanlike manner and that the cost of repairing the same was" $5,160.80; (f) "that the value of the house had the contract been completed would have been" $35,500 and that "the value of the house as left by . . . Capaldi" was

---

[1] The bill was dismissed as to the defendant Gennaro Capaldi as not being a party to the contract on the basis of the facts found by the master.

$27,991.94; and (g) that the plaintiffs are entitled to judgment against Frank Capaldi in the sum of $7,558.06 with interest from the date of entry of the bill of complaint. The master had previously found as a subsidiary finding that the plaintiffs had paid to the defendant under the contract the sum of $33,981.58.

1. We need not consider those objections (now exceptions under Rule 90 of the Superior Court [1954]) to the master's report which seek merely revisions in the master's recitals of the testimony, or which assert that particular findings had no support in the evidence. No transcript appears to have been taken by a stenographer selected or approved by the master before any evidence was introduced and summaries of evidence to determine "whether the evidence was sufficient in law to support a finding of fact" could not be obtained under Rule 90 for that purpose.

2. Various exceptions are directed to the issue, apparently much discussed before the master, whether the plaintiffs' payments under the contract were made promptly. The master has found that they were made promptly under the circumstances. Since there are no summaries of the evidence, obtained in compliance with Rule 90 (see *Sheppard Envelope Co.* v. *Arcade Malleable Iron Co.* 335 Mass. 180, 184–185), we cannot say on the present record that this conclusion was erroneous. There is thus no basis on this record for considering whether delays in payments by the plaintiffs excused any performance required of the defendant under the contract.

3. The defendant argues that the bill should be dismissed because the master's findings show a variance between the bill of complaint and the proof, in that the bill alleged misrepresentations by (or in behalf of) the defendant, leading the plaintiffs to make the contract, whereas the master found that these charges had not been sustained. The bill (designated as one for a declaratory judgment), however, also seeks (as already stated) a construction of the contract and a determination of the damages caused by the defendant's somewhat generally alleged

negligence and faulty construction. The proof and findings appear to be consistent with these allegations which are separate from the allegations of misrepresentation.

4. The defendant contends that the master's finding that the plaintiffs were "justified in calling off the contract" is inconsistent with his finding that the defendant "was not justified in leaving the job." Even if these findings are in fact inconsistent, the master has made definite findings with respect to the serious deficiencies of the defendant's work which justify charging the defendant with the damages caused by those deficiencies without regard to whether he stopped work wrongfully, leaving work undone and badly done, or was prevented from further performance by the plaintiffs' justified termination of the contract for cause. The materiality of the inconsistency, if one exists, has not been shown.

5. With respect to the issue of damages, the defendant filed various objections to the report, principally drawing attention to the inadequacy or absence of subsidiary findings. The matter of recommitting a master's report for more complete subsidiary findings is normally a matter within the discretion of the court which appointed him (see *Black* v. *Parker Manuf. Co.* 329 Mass. 105, 117–118). Although the master's subsidiary findings on damages are not as complete and clear as would be desirable, this is not a case (compare *Turgeon* v. *Turgeon,* 326 Mass. 384, 386) where a failure to make any subsidiary findings, touching relevant and vital issues of the case, requires recommittal or a new trial as a matter of law. Accordingly, we must limit our review of the case on the issue of damages to the question whether a proper decree was entered upon the basis of the findings in the master's report. See *Zuckernik* v. *Jordan Marsh Co.* 290 Mass. 151, 156; *Dartmouth* v. *Silva,* 325 Mass. 401, 403–404.

The report of the master shows on its face a basic error in computing damages. The master determined the principal amount of the damages to the plaintiffs to be $7,558.06, which he found to be the reasonable cost of completing the

uncompleted work and repairing the defendant's defective work. However, the master has found that the plaintiffs paid to the defendant only $33,981.58, not $35,500, the contract price. The measure of the plaintiffs' damages (at least in the absence of other elements of damage, as, for example, for delay in construction, which the master has not found here) can be only in the amount of the reasonable cost of completing the contract and repairing the defendant's defective performance less such part of the contract price as has not been paid. This is true notwithstanding the master's finding that the defendant has not made "substantial performance in good faith." *Ficara* v. *Belleau*, 331 Mass. 80, 81–82 (by which the rule in the lines of cases headed by *Sipley* v. *Stickney*, 190 Mass. 43, 46, and *Glazer* v. *Schwartz*, 276 Mass. 54, was held inapplicable to facts comparable to those here presented, where the plaintiff owners are attempting to recover damages for the defendant's wilful breach and malperformance). Restatement: Contracts, § 346. See Williston, Contracts (Rev. ed.) § 842, but compare §§ 1474–1476. See also 39 Mass. L. Q. (3) 52–53. It is apparent on the face of the report that the principal amount of the damages assessed is excessive by $1,518.42,[2] the difference between the contract price and the sum which the plaintiffs had in fact paid under the contract. The unpaid balance of $1,518.42 must be deducted (under the rule in *Ficara* v. *Belleau*, 331 Mass. 80) from the damages which the final decree ordered paid to the plaintiffs, together with any interest computed on that amount.

The defendant argues that it was improper to include, as the cost of a defect to be cured, the $500 difference between (a) the cost of two General Electric oil burners and (b) the cost of one International oil burner actually furnished. The contract seems to call for only one "oil burner of General Electric, Lennox, Garwood or its equal." Al-

---

[2] The computation is:

| Item | | |
|---|---|---|
| 1 | Contract price | $35,500.00 |
| 2 | Amount paid by the plaintiffs under the contract | 33,981.58 |
| 3 | Balance of contract price unpaid | $1,518.42 |

though some at least of the testimony on the issue of the heating system is recited by the master, he made no express subsidiary findings adequate to present for our consideration the question which the defendant now attempts to argue to us. The master did make a finding that the cost of repairing a long list of defects in the defendant's work was $5,160.80 and in that finding incorporated by reference, somewhat obscurely, his earlier recital of testimony about such a list, which included this $500 item. Even if the defendant's exceptions on this subject can be regarded as raising the question he now seeks to argue, we do not have available in the record any proper summary (reported in compliance with Rule 90) of so much of the evidence as was necessary to permit the court to pass upon whether, in view of the contract and specifications as modified, there was evidence to justify the master's finding that the defendant was chargeable with this item.

The defendant's other exceptions and contentions relating to damages are not sufficiently presented by this record to require consideration.

6. The defendant's exceptions to certain rulings of law reported by the master are without merit. Assuming that the testimony, referred to in these rulings, was offered in relation to this bill in equity as well as with respect to the action at law heard by the master at the same time, we see no error in the rulings.

The master excluded expert testimony offered by the defendant. There is nothing in the record to show the alleged qualifications of the witness, and, therefore, we cannot pass upon the correctness of the master's ruling.

The master excluded evidence offered by the defendant that the plaintiffs did not carry their "own fire insurance . . . [i]ncreasing the insurance as home progresses in construction," as the contract required. It is by no means clear that the somewhat indefinite language of the particular contract provision (compare the very specific terms of the contract clause considered in Parker and Adams, The A. I. A. Standard Contract Forms and the Law, 45–47)

was intended in any way for the benefit of the defendant
or to cover property of the defendant or the defendant's
insurable interest in the building (see *Adams* v. *Nichols,*
19 Pick. 275, 278; *Morse* v. *Boston,* 260 Mass. 255, 263;
Williston, Contracts [Rev. ed.] § 1964). There is nothing
in the record to indicate that the defendant has been harmed
by the plaintiffs' failure to carry insurance, even if the in-
surance was intended for the benefit of the defendant (on
the theory that the contract implied that he should be a
named insured or that he should be relieved by the exist-
ence of the insurance, as against the plaintiffs, of any ob-
ligation to rebuild construction destroyed by fire, both pos-
sibilities as to which we do not now intend any suggestion).
Nor does the record give any indication that the failure to
take out insurance contributed in any way to the defendant's
defective performance, or was a cause of his stopping work,
or was even known to the defendant while construction was
in progress. If the question had been raised during con-
struction, the defendant could easily have protected any
interest of his own by a binder pending action by the plain-
tiffs. Unless the failure to take insurance was wilfully con-
tinued by the plaintiffs after the issue had been raised,
it would not seem a material breach, which would in any
degree excuse performance by the defendant. We think
the master did not exceed a sound discretion in ruling that
the evidence was not relevant.

Evidence offered by the defendant that he had a build-
er's license in Boston related only to the issue of misrepre-
sentation, on which the master's findings were favorable
to the defendant. Its materiality, even on the issue of mis-
representation, is not apparent on the record.

There is nothing in the record to show any impropriety
in admitting in cross-examination pleadings in other liti-
gation in which the plaintiffs were defendants and Frank
Capaldi Construction Company was the plaintiff. The
master here found that the parties to this contract were
the plaintiffs and Frank Capaldi doing business as Frank
Capaldi Construction Company. The present parties thus

were the parties to the other litigation and admissions in such earlier pleadings might well be relevant.

7. The interlocutory decrees denying the motion to recommit the report to the master and confirming the master's report are affirmed. The final decree is to be modified by reducing the principal amount of the indebtedness of the defendant to the plaintiffs (as stated in paragraph 1 of the final decree) to $6,039.64[3] together with interest on that sum from February 5, 1956, to the date of the decree.

*So ordered.*

[3] This computation is as follows:

Item
1  Amount of damages caused by defendant's breaches
     of contract as found by the master     .     .     .     $7,558.06
   *less*
2  Balance of contract price unpaid as adjusted in ac-
     cordance with this opinion (see note 2, *supra*)     .      1,518.42
                                                                        ─────────
                                                                        $6,039 64

We discover no basis in the record for the action of the trial judge in the final decree in setting the principal amount of damages at $7,750 rather than at the figure (Item 1 above) set by the master.