NATHAN FRANCIS *vs.* SARAH MOGUL & another.[1]

Suffolk.   February 3, 1958. — May 8, 1958.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Estoppel.   Mortgage,* Of personal property:  foreclosure.

Evidence in an action warranting findings that the defendant, as the real party in interest although ostensibly acting as agent for another, brought about a sale of a truck to the plaintiff in which the plaintiff gave an instalment note secured by a mortgage on the truck providing that the proceeds of fire insurance thereon should be applied to replacement thereof or on the note at the mortgagee's option, that subsequently the truck was substantially damaged by fire at a time when the plain-

---

[1] Harold A. Leventhal.

tiff was not in default, and that the defendant agreed with the plaintiff that the payments under the note would be suspended until the truck was repaired and put on the road again and that the proceeds of the fire insurance, which were turned over to the defendant by the plaintiff, would be applied to repairing the truck, any balance remaining to be applied on the note, justified a conclusion that the defendant and his purported principal were estopped from foreclosing the mortgage thereafter at a time when the truck had not been repaired nor the insurance proceeds applied as agreed.

CONTRACT OR TORT.   Writ in the Superior Court dated December 22, 1954.

The action was tried before *Swift*, J.

*Joseph E. Levine*, for the defendants.

*Louis Kobrin*, for the plaintiff, submitted a brief.

COUNIHAN, J.   In this action of contract or tort the declaration is in three counts.   In count 1 the plaintiff alleges that he executed and delivered to Mogul a chattel mortgage on a Mack trailer truck to secure a note for $7,150, and that Mogul without due and sufficient legal notice and without just cause and in breach of her agreement foreclosed the mortgage in an illegal manner and deprived the plaintiff of the ownership of the truck.   In count 3 he alleges that Leventhal converted the truck to his own use.   Count 2 was waived by the plaintiff.

The case was tried to a jury who returned a verdict against each defendant.   It comes here upon exceptions of the defendants to the denial of their motions for directed verdicts, to the denial of their requests for rulings, and to parts of the judge's charge.   There was no error.

The evidence was conflicting but on the record the jury would have been warranted in finding the following: Leventhal was and had been for many years a moneylender and we were told that Mogul was his secretary.   In his dealings with the plaintiff Leventhal was the real party in interest although ostensibly acting as the agent of Mogul.

Shortly before December 19, 1952, Leventhal interested the plaintiff in the purchase of the truck involved in this case and also persuaded the plaintiff to find a customer for another similar truck.   The plaintiff agreed to pay Leven-

thal $6,500 for the truck he purchased and Leventhal agreed to pay him $500 for selling the other truck, such $500 to be credited to the plaintiff's account "at the end." The plaintiff made no down payment but agreed that he would pay Leventhal $250 a month until the truck was paid for in full. There was a finance charge of $650 which brought the price of the truck up to $7,150.

On December 19, 1952, Leventhal delivered to the plaintiff a bill of sale of the truck signed by Mogul. On the same day the plaintiff signed and delivered to Leventhal a note for $7,150 payable to Mogul and a chattel mortgage on the truck to Mogul in the sum of $7,150 to secure payment of the note. This note was indorsed without recourse by Mogul and delivered to Leventhal. Subsequently the note was indorsed by Leventhal to Mogul, trustee for Robert S. Leventhal.

At the time the plaintiff signed the note and chattel mortgage both were blank except for the printed matter thereon. Later the blank spaces were filled in so that it appeared that the note was to be paid in full one year from its date. The plaintiff made eleven payments of $250 each, some in cash and some by checks, one of which at least was indorsed by Leventhal.

On February 25, 1954, when on the highway, the truck caught fire and was damaged. The plaintiff reported the fire to Leventhal who told him that he would take care of the loss because he had more experience in dealing with insurance companies than the plaintiff. As a result the plaintiff signed a proof of loss in which he stated that his loss on the truck was a total one.

The plaintiff at that time told Leventhal that he would be unable to make any further payments on the note until the truck was fixed up and put on the road. Leventhal said "he would go along with that." In August, 1954, Leventhal settled the loss. In July, 1954, the plaintiff asked Leventhal "when we were going to get the truck fixed up and put on the road." Leventhal told him to take the truck to a diesel repairman in Medford and tell him "to get on the job as fast as he could and get it out." In August, 1954,

the plaintiff indorsed the fire loss check to Leventhal who said he would apply it first to fixing up the truck, and then apply any balance on the mortgage note.

Sometime after January 1, 1955, the plaintiff telephoned Leventhal and said nothing had been done by way of fixing up the truck. Leventhal then said, "I have changed my mind. I have decided that I don't think that I will go along with that deal at all." The plaintiff protested but Leventhal said that "he was sorry but that was the way that he wanted it and that was the way it was going to be." Later the plaintiff went to Leventhal's office and Leventhal told him, "Look, you don't own the truck anymore. We foreclosed the mortgage on that truck and wiped you out."

The jury could have also found the plaintiff never received any notice of foreclosure and first learned of it when he was told by Leventhal. Leventhal testified that at the time of the fire the plaintiff was up to date in his payments. The foreclosure sale took place in Leventhal's office and the truck was sold to Mogul for $350 on October 15, 1954.

The plaintiff learned for the first time at the trial that Leventhal had made a charge against him of $600 for renewing the note after the expiration of a year from its date.

There was no error in the denial of the motions to direct verdicts for the defendants. Leventhal admitted that there was no default on the part of the plaintiff at the time the truck caught on fire. The only question is whether Leventhal acting for Mogul agreed with the plaintiff that there would be a suspension of payments during the time necessary for repairing the truck. We think that this question was for the jury to decide. The defendants argue that there was no consideration for such an agreement, but we are of opinion that because of what Leventhal told the plaintiff about suspension of payments on the note it is not necessary to decide that point.

No case has been brought to our attention and we have found none in our jurisdiction where the question of an estoppel to foreclose a chattel mortgage because of assurances given by a mortgagee to a mortgagor that payments would

be suspended for a definite period has been considered. In *Depon* v. *Shawye*, 263 Mass. 206, which involved the foreclosure of a mortgage on real estate, at page 210 it was held that the "oral extension of the mortgage, agreed upon between the mortgagee . . . and the mortgagor . . . was binding upon them and upon those who had notice of it . . . . Although the mortgage deed was a sealed instrument, and no new consideration for the extension appears, . . . the action of the mortgagor was affected by the assurance of extension [by the mortgagee] . . . ." *Conroy* v. *Toomay*, 234 Mass. 384, 386. *Paine* v. *Bank of Ceres*, 59 Cal. App. (2d) 242. Jones on Chattel Mortgages (6th ed.) § 704.

We think that such assurance applies also to the provision in the mortgage, upon which the defendants rely, to the effect that the proceeds of any insurance shall be applied toward replacement of the truck or payment of the note and mortgage at the mortgagee's option. Moreover, the jury could reasonably find that Leventhal told the plaintiff when he indorsed the insurance draft that he (Leventhal) would apply the proceeds of the insurance to what it would cost to fix the truck, and the amount that would be left he would apply to payments on the mortgage note, and the plaintiff agreed. This the jury could find clearly constituted an assurance that the mortgagee would leave the mortgage situation in statu quo until the truck was fully repaired and put on the road again. The jury could also find that the defendants were estopped from proceeding with a foreclosure of the mortgage because of such assurances. See *Di Mare* v. *Capaldi*, 336 Mass. 497, 504.

The defendants duly filed the requests for rulings which are set forth in the margin[1] which they assert were refused

---

[1] "4. Plaintiff is bound by following terms of mortgage and failure to comply results in default by plaintiff of note and mortgage. (a) Pay note according to its tenor. (b) Keep mortgaged property in good repair, order and condition and promptly replace any and all worn, broken or defective parts. (c) Keep property insured against loss and damages by fire, theft and collision. (d) Make policy payable to mortgagee. (e) Deposit policy with mortgagee. 5. There was no legal consideration for any promise by Leventhal to Francis to repair tractor. 6. By terms of mortgage Francis was bound to keep tractor in good repair, order, condition and promptly replace any worn, broken or defective parts. 7. There was no evidence, and in fact,

by the judge. We have carefully examined the charge of the judge and are of opinion that all the requests of the defendants were fully covered by the judge except perhaps request numbered 5. What we have said hereinbefore regarding the assurance given the plaintiff by Leventhal as to suspension of payments while the truck was being repaired disposes of this request.

The defendants in their bill of exceptions also contend that the judge erred in instructing the jury that "if Leventhal invited [the] plaintiff to his office to indorse [the] insurance check and agreed to suspend payments on [the] note . . . [until the] tractor [was] repaired . . . this would be a legal consideration for his promise, and that there was not default on October 8, 1954, when the foreclosure notice was purported to have been sent if the jury found that the plaintiff had made the payments as he claimed and that further payments were to be suspended until tractor was repaired." We have scrutinized the charge of the judge as it appears in the record and find no language in it either in substance or by way of inference which conforms to the language complained of by the defendants.

*Exceptions overruled.*

plaintiff's counsel admitted in open court, that the only insurance policy covering the tractor was the one that was in existence at the time of the fire which damaged the tractor and under which loss settlement in the sum of $3,189 was made by the insurance company. 8. Proceeds of any insurance shall be applied toward replacement of tractor or payment of note and mortgage at mortgagee's option. 9. Default of any obligation assumed by mortgagor, at option of mortgagee renders entire unpaid balance due and payable. 10. Mortgagor entitled to possession of tractor only while note and mortgage not in default. 11. After default mortgagee entitled to possession of the tractor. 12. If there was a default and mortgagee took possession, could not be a conversion of tractor by mortgage. 13. Mortgage provides by agreement, the foreclosure proceedings after default, and steps taken in accordance with mortgage are proper steps."