Thomas A. BARNES d/b/a
T. A. BARNES CONSTRUCTION CO.
Plaintiff

vs.

ORANGE FOUNDRY, INC. and
Richard W. PETERSON, Defendants

No. 334

District Court/Franklin, ss
Appellate Division/Western District
Trial Court of the
Commonwealth of Massachusetts

November 8, 1982

Jack D. Curtiss, Esq., counsel for plaintiff.
David A. Wojcik, Esq., counsel for defendants.

## DECISION AND ORDER

This cause came on to and was heard in the Appellate Division for the Western District sitting in Springfield upon report from the Orange Division of the District Court Department and it was found and decided that there was no prejudicial error.

It is hereby ordered:

That the Clerk of the Orange Division of the District Court Department make the following entry in said case on the docket of said Court, namely:—

Report Dismissed.

Date: November 8, 1982

**Francis J. Larkin, Justice**

**Bernard Lenhoff, Justice**

**Mel L. Greenberg, Justice**

Opinion filed herewith

**Robert E. Fein, Clerk**

## OPINION

**Larkin, J.** This appeal involves issues of law generated by a claim by the plaintiff, Thomas A. Barnes, a building contractor (hereinafter referred to as the "contractor") for payment for certain construction work and materials furnished to the defendants, Orange Foundry, Inc. (hereinafter referred to as the "Owner") and Richard W. Peterson (hereinafter referred to as "Peterson").

This action was commenced when the contractor filed his complaint against the Owner and Peterson. The complaint sought damages of $10,699.00 and was brought on three counts. The first count sought damages on a written agreement, the second count sought damages under a theory of **quantum meruit**, and the third count sought damages under the provisions of G.L. c. 93A sec. 2. The Owner and Peterson filed an answer and counterclaim denying the allegations made in Counts I, II and III of the Contractor's complaint and alleging as affirmative defenses that Peterson was at all times relevant acting as an officer and agent of the Owner; that the construction work performed by the Contractor was not done in a workmanlike manner and the Contractor failed to complete all of the work under the contract; and that the Contractor was in breach of the contract which provided that final payment was to be made only upon completion of the work. By way of counterclaim, the Owner asserted that the Contractor failed to complete the work by September 3, 1979 as arguably required by the contract, and owed the Owner $300.00 per day for liquidated damages, and that the Contractor owed the Owner additional damages as a result of the Contractor's incomplete, defective and unworkmanlike work. The Contractor filed an answer to the Owner's counterclaims denying the allegations of both counterclaims.

The Court found for the Contractor and against the Owner on Count I of the complaint and fixed damages in the sum of $4,405.00. The Court further found for the Owner on Counts II and III of the complaint and found for the defendant Peterson on all counts of the complaint, (on the basis that Peterson, at all relevant times, had acted in a representative capacity). The Court found for the Contractor on both the first and second counterclaims.

The record indicates that the Contractor had been engaged in the construction business in the Orange area for approximately ten years. The individual defendant Peterson was an officer of the Owner - a corporation engaged in the foundry business in Orange, Massachusetts. In the summer of 1979 the Owner decided to convert "attic space" in a foundry building into a six-room office suite. In furtherance of this objective the Owner submitted a detailed floor plan for the projected renovation. Thereafter the Contractor and the Owner inspected the situs of the proposed work. During the latter part of July, 1979 the parties again met at which time the Contractor submitted a written "proposal" to the Owner. This "proposal," set forth in handwriting on a single sheet of paper, outlined the work to be done and established a projected price of $38,500.00 for the proposed work.

On August 6, 1979, Peterson, on behalf

of the Owner, presented the Contractor another handwritten single sheet of paper containing the following language.

" 8/6/79
Orange Foundry—Tom Barnes Job complete turn key operation by September **3rd** for $35,800. Three hundred dollars per day will be deducted from the above price for every day past September **3rd.**

**Payment Schedule**

9,000 25% payment when floor complete

9,000 25% payment when studing complete

9,000 25% payment when tile laid and paneling up

8,800 25% payment when complete

Everything stated in quote plus $800.—front doors and stairs, but not including air-conditioning.

Orange Foundry

s/ Richard W. Peterson

s/ Thomas A. Barnes"

The record reflects that after reviewing the agreement and before signing it, the Contractor and the Owner had some discussion concerning the proposed completion date. Prior to entering into the contract, the record indicates that the parties had met with the local building inspector. This meeting resulted in the realization that in order to locate the projected office suite in the second floor attic area of the foundry building, it would be necessary to undertake considerable work in order to alter the existing support trusses then present in the attic area. As a result of the alteration of the trusses, it became apparent that it would be necessary for the Contractor to put in place steel support columns to support the floor of the office suite to be constructed under the contract.

At all events, there was evidence, which the trial judge obviously credited, that the Contractor commenced work on the job immediately upon execution of the contract, employed two shifts and had his crews working diligently through the weekends in order that the project might be completed in as timely a fashion as possible, considering the scope and extent of the work to be performed.

As of September 3, 1979, the Contractor had received periodic payments totaling $18,000.00 pursuant to the schedule. By that date, the record indicates that the Contractor informed the Owner that it might proceed to occupy the offices. Five days later, on September 8th, the Owner proceeded to move in and occupy the new suite of offices. At the time that the Owner moved in there still remained some work to be performed. At or about this time, but clearly after September 3, 1979, the Owner paid an additional $9,000.00 to the Contractor, again, presumably pursuant to the periodic payment schedule. This $9,000.00 payment brought to $27,000.00 the total payments which the Owner made to the Contractor as the Contractor proceeded towards ultimate completion of the job.

The Contractor continued to do work on the project until approximately January 1, 1980, at which time the Owner refused to pay any further amounts under the contract. With this refusal the Contractor ceased his work on the premises and the instant action commenced in the District Court—the Contractor suing both the corporate and individual defendants for the balance assertedly remaining under the agreement and the Owner counterclaiming for the purportedly incomplete and defective work as well as seeking to invoke the strictures of the "penalty" clauses set forth above.

After the suit was entered and during the course of the trial, in January of 1981, the Court took a "view" of the premises and observed several aspects of the job which required correction, repair and further installation. The Court found that the reasonable cost of repairs, installation of additional columns and corrections of defective work was $6,294.00. The Court deducted this amount from the total of $10,699.00 which the Contractor was

seeking and, accordingly, awarded him the sum of $4,405.00.

It is the essence of the Owner's position that there was a basic inconsistency in the trial court's award. This because the trial court awarded judgment in favor of the Contractor in the amount of $4,405.00 notwithstanding the Court's further finding that it would cost $6,194.00 to correct the incomplete and defective work and that, as a result of this situation, the Contractor was in "breach of the contract." We disagree.

It is true that where a contractor alleges complete performance, but the record shows less than full performance he cannot recover upon a Count in contract but only for fair value upon a Count in **quantum meruit**. See **Bucholz v. Green Bros. Co.**, 272 Mass. 49, 55 (1930).[1]

In order to recover in a context such as is presented here, the record must affirmatively show that a builder substantially performed the work in good faith. See **Bowen v. Kimball**, 203 Mass. 364, 370 (1909). This has been held to mean that the builder must have made an honest effort to complete the work as projected and that the owner, as a result of the work and effort of the builder, has obtained substantially what was contracted or bargained for. See, **Hayward v. Leonard**, 24 Mass. 180, 186 (1828); **Handy v. Bliss**, 204 Mass. 513, 520 (1910); **Hub Constr. Co. v. Dudley**, 274 Mass. 493, 496 (1931); **CC&T Const. Co. v. Coleman Bros. Corp.**, 3 Mass. App. 372, (1975).

It is a fundamental principle of contract law that upon proof of substantial completion in good faith, if the deficiencies are capable of being remedied, the contractor is entitled to recover the fair value of the labor expended and materials utilized, measured by the contract price less the owner's reasonable cost to either complete or remedy the putative defects. **Dahlstrom Met. Door Co. v. Evatt Cons. Co.**, 256 Mass. 404, 416 (1926); **DiMare v. Capaldi**, 336 Mass. 497 (1957).

On this record we have no hesitancy in upholding the trial Court's implicit finding that the plaintiff—Contractor performed substantially and in good faith. (See **Shalloo v. Ricciardi**, 348 Mass. 682 (1965), where it was held that a finding of a "balance due" on a contract, the situation here, implies that there has been substantial performance in good faith). We are satisfied that there is substantial evidence in the record to uphold the trial judge's conclusion that the contractor made an honest effort to work diligently to complete the job and that the owner has obtained substantially what he bargained for. The testimony that the Contractor commenced the job immediately upon the execution of the contract, employed two shifts and had his crews working weekends was strong evidence of his good faith in diligently pushing forward with the completion of the work.[2] The fact that the Contractor was able to certify that the premises were ready for occupancy on September 3, 1979, the date stipulated in the memorandum of contract, and that the

---

[1] In this category of case it is familiar that the contractor pleads alternatively in contract and quantum meruit or risks non-recovery for failure to so plead. See, e.g., **Boston Plate & Window Glass Co. v. John Bowen Co., Inc.**, 335 Mass. 697 (1957). See also, **Blakeney & Corwin, The Measure of Damages and How to prove them in construction cases, from the Contractor's Viewpoint and from the Owner's Viewpoint, in "Proof of Damages,"** MCLE-NELI, (materials accompanying seminar, Boston, April 1980) pp 1-6. In this case although the trial court's judgment in favor of the contractor in the amount of $4,405.00 was on Count I of the Contractor's complaint (the contract claim) (see "Findings," Report Exhibit "I" p 3), it is abundantly clear that the trial judge obviously intended that his award be predicated on **quantum meruit** considerations and, accordingly, should have been entered in response to Count II of the Contractor's complaint instead of Count I. We believe that this was pure inadvertence and, accordingly, since the record so clearly reflects that the trial court's approach and analysis was so plainly actuated by **quantum meruit** principles, the mistake in entering the finding pursuant to the inappropriate Count of the complaint should not be prejudicially fatal.

[2] We recognize that the Owner disputed some of this testimony but the question of credibility involved on this point was clearly for the trial judge.

Owner actually occupied the premises some five days later, was further compelling evidence of the good faith and diligence of the Contractor and, further, that it was perceived as such by the Owner. Compare, **Handy v. Bliss,** 204 Mass. 513, 519 (1910). Our opinion in this regard is reinforced by consideration of the nature, extent and complexity of the projected work and the exceedingly short time frame sought to be stipulated by the Owner to complete the job. What the Owner proposed to have done and what the Contractor sought to undertake—on the basis of the sketchiest of memoranda—were efforts to effectuate a substantial transformation of an attic area in an "old foundry" building into a modern office suite. This suite was to comprise separate rooms for a manufacturing display room, together with finished rooms for conferences, sales meetings and an extensive reception area. In addition, there was provision for two lavatories (one with shower) and further provision for closet space. (See floor plan, submitted as Ex. "D" at trial. It is significant that this floor plan was never referenced in the putative contractual memoranda). All of this was in addition to undertaking the municipality mandated "support work." The fact that the Contractor was able to substantially perform all of this work in, again, what must be objectively considered an almost oppressively tight time frame is compelling testimony to his application, diligence, as well as results achieved.

It is, of course, clear that the Contractor did not completely finish the job and that as late as January of 1980 there was still significant work to be accomplished. It is the Owner's position that the extent of this work, confirmed by the trial judge's view, almost a year later, militates against the district court's conclusion that there had been that degree of "substantial performance" of the originally contemplated project to ground a quantum meruit recovery. Again, we disagree. The extent of completion necessary to justify a determination of substantial performance depends upon the facts of each case and is preeminently a question for the trier of fact. See, **e.g. Nevins v. Ward,** 320 Mass. 70, 74 (1946) and cases cited therein. In view of the amount of work still to be done at the time that the owner refused to make additional payments, causing the Contractor to abandon further work, this clearly is not representative of that line of cases where it may be said that the work undone was so "trivial" as to mandate a finding of substantial performance. See, **Kauranen v. Mattaliano,** 347 Mass. 583 (1964) (and cases cited therein). On the other hand, it is equally clear that this is not an instance where there has been a contractor's **willful** deviation from contract terms without justification. See, e.g., **Sipley v. Stickney,** 190 Mass. 43, 46 (1906); **Hennessey v. Preston,** 219 Mass. 61, 63 (1914). Rather we believe that this case falls somewhere between these polar extremes. Again we believe that there was abundant evidence in the record to justify the trial judge's determination that the Contractor had worked diligently and in good faith to undertake a complex rehabilitation within what obviously proved to be an unduly delimited time frame. That while he did not succeed in completing the project in perfect fashion, the work that the Contractor did perform, the manner in which he performed it, the results achieved and the benefit conferred upon the Owner more than justified the application of familiar principles of **quantum meruit** recovery. See, e.g., **Bowen v. Kimball, supra; Hub Const. Co. v. Dudley, supra.** This conclusion is reinforced where the trial judge was able to place a precise and particularized value on the amount of work that would be required to place the Owner in exactly the situation envisioned by the Owner. See, **Dahlstrom Met. Door Co. v. Evatt Cons. Co. supra, DiMare v. Capaldi, supra.**

An additional issue argued on appeal was the denial by the trial court of a requested ruling of law which would have rendered operative the so-called "liquidated damage" clause of the

contract between the parties. In essence, in the Owner's view, this would have required that the Contractor deduct three hundred dollars from the contract price for each day beyond September 3rd (1979) that the project was not completely finished. Although, it would undoubtedly have been better to "allow" rather than deny this requested ruling, in light of the Court's ultimate determination, and, upon a consideration of the overall record in this case, we do not believe that the action of the trial judge constituted prejudicial error. First we believe that the trial court's finding that there had been "discussions" about the consequences of a completion date of September 3rd, when the Owner first presented the Contractor with his memoranda, coupled with the fact that the Owner not only moved into the new offices after September 3rd but also made an additional substantial payment to the Contractor after this date without apparently adverting to the "penalty clause," clearly shows an intent on the part of the Owner to waive this provision. Compare, **Fox v. Harding,** 61 Mass. (7 Cush.), 516 (1851). In view of our disposition of this issue it is not essential that we determine whether if this clause retained any residual legal vitality it would have been unreasonable and hence invalid under the circumstances of this case. Were it necessary to reach the issue we have no hesitancy in asserting that such a clause would indeed be unreasonable on this record as approaching a proscribed penalty. See, e.g., **A-Z Servicecenter, Inc. v. Segall,** 334 Mass. 672 (1956).

For all of these reasons, we believe that there is no error on this record and, accordingly, that the Report should be dismissed.

It is so Ordered

**Francis J. Larkin, Justice**
**Mel L. Greenberg, Justice**
**Bernard Lenhoff, Justice**

This certifies that this is the OPINION of the Appellate Division in this case.

**Robert E. Fein, Clerk**