## In re Pew Memorial Trust No. 2

699

*William C. Bodine* and *John G. Harkins, Jr.,* for petitioner.

*Minturn O. Wright* and *Morris R. Brooke,* for respondents.

SHOYER, *J.,* June 30, 1977—On September 4, 1974, the Glenmede Trust Company (Glenmede) filed its petition with this court, asking for a declaration of its rights and responsibilities in connection with the sale of 5,564,357 shares of the common stock of General Crude Oil Company (General Crude), pursuant to an allegedly conditional contract which it had entered into on August 16, 1974, with the Dow Chemical Company (Dow). Cited as respondents, in addition to Dow, were the Honorable Israel Packel, Attorney General of the Commonwealth of Pennsylvania, in his capacity as

parens patriae, the General Crude Oil Company (General Crude), and the International Paper Company (IP). The petition also sought this court's approval of the sale of said stock to IP in accordance with the September 4, 1974, resolution of Glenmede's board of directors.

Petitioner is a Pennsylvania trust company and is the trustee of the Pew Memorial Trust (trust) under a trust indenture dated June 3, 1957. The settlor of the trust was the Pew Memorial Foundation, a Pennsylvania non-profit corporation. The trust is an irrevocable perpetual trust for the exclusive benefit of charitable organizations exempt from Federal income taxation under 26 U.S.C.A. §501(c)(3), or successor provisions of the Internal Revenue Code.

In January, 1974, among the assets of the trust, there were 5,564,357 shares of the common stock of General Crude. Such General Crude common stock had a fair market value on August 16, 1974, of $41.25 per share. The trust's holding of common stock constituted approximately 63 percent of the outstanding stock of General Crude.

The board of directors of Glenmede voted on August 16, 1974, to adopt the merger agreement of August 12 entered into between Dow and General Crude through which Dow would acquire all the shares of the common stock of General Crude held by Glenmede as trustee of the trust. The board of directors of Glenmede, at the same time, also voted to authorize its officers to vote the trust's shares of General Crude in favor of the merger agreement at a meeting of the shareholders of General Crude to be called sometime in the future.

After the board of directors of Glenmede so voted, Glenmede's officers delivered a letter to Dow adopting the Dow merger agreement and agreeing, "sub-

ject to such obligations as may be imposed upon a trustee pursuant to the laws of the Commonwealth of Pennsylvania respecting fiduciaries," to vote the shares of General Crude in favor of the Dow merger agreement. The quoted condition was inserted by A. R. Bell, president, and Augustus S. Ballard, secretary of Glenmede, because after adjournment of Glenmede's board and prior to the composition and delivery of said letter, IP had raised its offer from $47.50 to $50 per share. This increased offer was made orally by Mr. Monge, vice-chairman of IP's board, to Messrs. Bell and Ballard. Mr. Monge promised to deliver the offer in writing by Monday, August 19. Actually, delivery was made on August 18.

At a subsequent meeting on September 4, 1974, the board of directors of Glenmede voted to withdraw from the Dow-General Crude merger agreement and, subject to judicial approval, voted to sell its General Crude shares to a subsidiary of IP for $50 a share, and, on the same day, petitioned this court for a citation to show cause why a decree should not be entered to the effect: "that Dow has no right or claim whatsoever to the General Crude stock held by Glenmede as Trustee of the Pew Memorial Trust, and no rights or claims accrue under or by virtue of Glenmede's August 16, 1974, letter to Dow, and that the sale of Glenmede's General Crude stock to IP is approved in accordance with the September 4, 1974, resolution of Glenmede's Board of Directors." This citation was served September 5, 1974, on Dow, IP, General Crude and the Attorney General of Pennsylvania.

Also on September 5, Dow commenced suit against Glenmede and its various officers and directors in Federal Court to compel specific performance of the board's action and alleged binding

commitment of August 16. Later, Dow petitioned the United States District Court to accept jurisdiction of this suit by removal, but (on October 25, 1974) this action was remanded by the District Court as improvidently removed.

In its answer to Glenmede's original petition in this case, Dow pleaded new matter in which it set up a counterclaim. In its paragraph 3, Dow referred to its Federal suit for petitioner's alleged breaching of Dow's contracts with Glenmede and General Crude and tortiously interfering with Dow's contractual rights and violating the Federal Security Laws. Dow also filed an answer to Glenmede's petition in its removal action to the District Court. In paragraph 3 of that answer, Dow sought both compensatory and punitive damages, but in paragraph 6 of its answer filed in this court, Dow denied jurisdiction of the orphans' court over its claims for damages.

On October 10, 1974, Dow unilaterally announced that it was "terminating" the merger agreement with General Crude. Thereafter, Dow withdrew its claim for specific performance of Glenmede's commitment to vote its shares of General Crude in favor of the Dow merger agreement but reserved whatever rights it might have as to damages.

By stipulation of all parties, this court entered a decree on November 25, 1974, dismissing General Crude as a party and approving the sale of General Crude stock to IP at $50 per share.

On January 15, 1975, this court sua sponte ordered Glenmede to file its account. The account was filed on March 17, 1975, and is now before the court for audit.

In this court's pre-trial order of July 21, 1976,

which was entered pursuant to stipulation of all the parties, it is provided that "Dow will reassert at audit its claims for damages against Glenmede and IP. The parties agree that the court has jurisdiction of all claims raised by the pleadings except for Dow's claim under Section 10(b) of the Securities and Exchange Act of 1934. The court has decided that all issues of liability respecting these claims be tried first . . ."

Since subject matter jurisdiction cannot be conferred on a court by agreement of the parties, it behooves us to look at the situation under which Dow's claim for damages is being presented to the court for its consideration.

## A.  IN LIGHT OF ITS MANDATORY JURISDICTION OVER INTER VIVOS TRUSTS AND ITS BROAD, VISITORIAL AND SUPERVISORY POWER OVER CHARITABLE USES, THIS COURT MUST, IN CONNECTION WITH THE DISPOSITION OF A CHARITABLE TRUST ASSET, PROCEED TO HEAR AND DISPOSE OF ALL CONTESTED ISSUES CONCERNING THE TRUSTEE'S CONDUCT.

Section 711(3) of the Probate, Estates and Fiduciaries Code of June 30, 1972, P.L. 508, as amended, 20 Pa.C.S.A. §711(3), concerning the "mandatory exercise of jurisdiction through [the] orphans' court division in general," accords orphans' courts exclusive jurisdiction over the ". . . administration and distribution of the real and personal property of inter vivos trusts. . . ." Section 715 of the same act accords the orphans' court division ". . . all legal and equitable powers required for or incidental to the jurisdiction it exercises." 20 Pa.C.S.A. §715.

Not only is an orphans' court required to involve itself in all matters concerning the administration and distribution of a trust, but it bears as well an historic, special burden of overseeing charitable trusts.[1] One of the most thorough explications of this responsibility for charitable trusts was set forth in Wilson v. Board of Directors of City Trusts, 324 Pa. 545, 188 Atl. 588 (1936).[2] After holding that the orphans' court has exclusive jurisdiction over the control, administration and management of trust estates and is responsible ". . . for the proper management, administration and preservation by the trustees of the trust res," Chief Justice Kephart went on to state:

"The scope of the powers that may be exercised by that court in relation to the administration, management and control of the trust property is *ample for all purposes.* It has been held that testamentary trustees are officers of the court (Laverelle's Estate, 101 Pa. Superior Ct. 448) and it is only right and proper that they should be subject to the control of the court to which they must account, which may surcharge them for dereliction in office and determine whether such dereliction has taken place. In the exercise of this power particularly where 'charitable uses or bequests are involved, it [the orphans' court] has [the] broad visitorial and supervisory powers of the Commonwealth': Toner's Estate, 260 Pa. 49. The Act of June 7, 1917, P.L. 363, Sec. 9(b), which provides that the orphans' court shall have jurisdiction over the 'control, removal, discharge and settlement of accounts of . . . testamentary trustees' confers extensive powers. In Laverelle's Estate, supra, the court said, 'The power to "control" has a comprehensive significance, including the right to direct, remand,

dominate,' and at p. 451: 'There can be no question that the orphans' court possesses plenary powers within its sphere.' In Lafferty v. Corcoran, 180 Pa. 309, this court said, with reference to the power of the orphans' court to compel an accounting by a trustee, 'The orphans' court has ample power to afford all needed relief in the premises. Its authority is plenary, embracing as it does all the powers of a court of chancery.' And, in Shollenberger's Appeal, 21 Pa. 337, the court said: '. . . within its appointed orbit its jurisdiction is exclusive, and therefore necessarily as extensive as the demands of justice.'

"The scope of supervisory control of necessity includes any matter which concerns the integrity of the trust res—its administration, its preservation and its disposition and any other matter wherein its officers [trustees] are affected in the discharge of their duties." (Emphasis supplied.) Id. at 550-51, 188 Atl. at 591-92.[3]

This view has recently been reaffirmed in Coleman Estate, 456 Pa. 163, 317 A. 2d 631 (1974), where the court stated:

"A charitable trust is initially and continuously subject to the parens patriae power of the Commonwealth and the supervisory jurisdiction of its courts . . . Moreover, the orphans' court has plenary power to ensure the competency and performance of trustees. Trustees of a charitable trust are fiduciaries, and as such are officers of the orphans' court, subject to its exclusive supervision and control . . ." Id. at 168-69, 317 A. 2d at 634 (Citation omitted.) See also Lehigh University v. Hower, 159 Pa. Superior Ct. 84, 93, 46 A. 2d 516, 520-21 (1946).

By issuing its citation of September 4, 1974, this

court assumed quasi in rem jurisdiction over the disposition of a trust asset of the Pew Memorial Trust, and drew to itself all ancillary questions concerning the trustee's exercise of its fiduciary powers: In re Pew Memorial Trust, Civ. Action No. 74-2345, Memorandum Opinion at 21-23 (E.D. Pa. October 25, 1974). See also Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456, 462-65 (1939); Binenstock Trust, 410 Pa. 425, 431-32, 190 A. 2d 288, 290 (1963); Craig Estate, 379 Pa. 157, 109 A. 2d 190, 197 (1954); Mathew's Trust Estate, 339 Pa. 219, 222, 13 A. 2d 9, 11 (1940); Thompson v. FitzGerald, 329 Pa. 497, 512-13, 198 Atl. 58, 66 (1938); Hoyt Estate, 52 D. & C. 2d 131, 138-39 (Bucks Co. O.C. 1971).

The central question of this litigation is the proper disposition of a charitable trust asset. Dow's "withdrawal" may well now cloud any claim Dow might ever have had for relief under the trust's conditional commitment letter of August 16, but it does not change the facts in the petition nor deprive this court of its statutorily imposed mandatory jurisdiction over the distribution and administration of the Pew Memorial Trust. By continuing to seek to obtain the benefits through damages of what it claims to have been a "contract," Dow, as a practical matter, has not withdrawn from its earlier position which led Glenmede initially to come before this court and seek judicial approval of the proposed sale as well as a declaration of rights of the parties.

The Pew Memorial Trust is a charitable trust. Dow is claiming damages which are stated by it to be in the millions of dollars. Any such recovery on the basis of the benefit of Dow's alleged bargain will substantially affect the trust's ability to make gifts

and disbursements from its res. Whether Dow seeks its remedy in cash or stock, it is still claiming a right to a trust asset. This court, in the proper exercise of its mandatory, plenary and supervisory powers, has assumed quasi in rem jurisdiction over the trust res. It must, therefore, proceed to decide all contested ancillary questions concerning the integrity, disposition and rights to the asset in question, including the propriety of the trustee's conduct. See, e.g., Byers v. McAuley, 149 U.S. 608, 619 (1893) ("Possession of the res draws to the court having possession all controversies concerning the res."); La Rocca Trust, 411 Pa. 633, 636-37, 193 A. 2d 409, 411 (1963) (in connection with distribution of inter vivos trusts, orphans' court should hear contested issue involving reformation of written instruments); Slagle's Estate, 335 Pa. 552, 557, 7 A. 2d 353, 355-56 (1939) (court must determine "all questions essential to a proper distribution"); Wilson v. Board of Directors of City Trusts, supra, 324 Pa. at 551, 188 Atl. at 592; Hoyt Estate, 52 D. & C. 2d 131, 138-39 (Bucks Co. O.C. 1971) (in connection with petition for approval with the effect of a judicial sale of a proposed sale of trust asset, orphans' court should hear disputed issue concerning validity of option contract concerning same trust asset).

Thus, in continuation of the exercise of its mandatory, plenary and visitorial powers concerning Glenmede's disposition of an asset of the Pew Memorial Trust, this court must hear and determine the propriety of the trustee's conduct under Pennsylvania fiduciary law.

## B. DUE TO ITS RECOGNIZED EXPERTISE IN MATTERS OF TRUST ADMINISTRATION AND

FIDUCIARY LAW, IT IS PROPER THAT THIS
COURT EXERCISE ITS DISCRETION TO
GRANT DECLARATORY RELIEF AND DECIDE
ALL CONTESTED ISSUES CONCERNING THE
TRUSTEE'S CONDUCT.

The second source of this court's power to grant
the relief requested in Glenmede's petition is the
Pennsylvania Uniform Declaratory Judgments Act
of June 18, 1923, P.L. 840, 12 P.S. §831 et seq.

Section 1 of that act states that ". . . [c]ourts of
record, within their respective jurisdictions, shall
have power to declare rights, status, and other legal
relations whether or not further relief is or could be
claimed." Act of June 18, 1923, supra, 12 P.S. §831.
A proceeding cannot be objected to merely because
it includes a prayer for declaratory relief. Id. The
declaration can be either affirmative or negative,
and shall have the force of a final judgment. Id.

Section 2 of the act, 12 P.S. §832, provides, inter
alia, that:

"Any person interested under a deed, will, writ-
ten contract, or other writings constituting a con-
tract, or whose right, status, or other legal relations
are affected by a . . . contract . . . may have deter-
mined any question of construction or validity aris-
ing under the instrument . . . [or] . . . contract . . .
and obtain a declaration of rights, status, or other
legal relations thereunder." Id., 12 P.S. §832.

Section 3 provides that a contract may be con-
strued either before or after there has been a
breach. Id., 12 P.S. §833.

Section 4 represents a recognition by the drafters
of the Uniform Act that the area of trust adminis-
tration is particularly susceptible and amenable to
declaratory relief. The section provides, in relevant

part: *"Any person interested,* as or through an executor, administrator, *trustee,* guardian, or other fiduciary, creditor, devisee, legatee, heir, next of kin, or cestui que trust, *in the administration of a trust . . . may have a declaration of rights or legal relations in respect thereto."* Id., 12 P.S. §834. (Emphasis supplied.)

Section 5 provides that sections 2, 3 and 4 of the act do not limit the court's general power, set forth in section 1, to "terminate the controversy" or "remove an uncertainty." Id., 12 P.S. §835.

Section 6 of the act provides that the granting of declaratory relief is discretionary and sets forth guidelines for the exercise of that discretion. Recently, our Supreme Court has determined that under section 6 of the act, the existence of another available remedy at law or in equity does not preclude a court from considering declaratory relief.

"If a remedy is specially provided by statutes, it must be pursued. If, on the other hand, there is another available remedy not statutorily created, whether such remedy is legal or equitable, *it is only one factor to be weighed by the court in its discretionary determination of whether a declaratory judgment would lie."* Friestad v. Travelers Indemnity Co., 452 Pa. 417, 425, 306 A. 2d 295, 299 (1973). (Emphasis supplied.) See also Liberty Mutual Insurance Co. v. S.G.S. Co., 456 Pa. 94, 97-98, 318 A. 2d 906, 907-08 (1974); McIlvaine v. Pennsylvania State Police, 454 Pa. 129, 133, 309 A. 2d 801, 803 (1973). Hence declaratory relief can no longer be considered extraordinary.

The present dispute presents a classic case for granting declaratory relief. From the beginning, declaratory judgment has been recognized as ". . . peculiarly appropriate to the orphans' court, vested as it is with supervisory powers over the adminis-

tration of decedents' estates." Cryan's Estate, 301 Pa. 386, 397, 152 Atl. 675, 679-80 (1930); accord Johnson Estate, 403 Pa. 476, 490, 171 A. 2d 518, 525 (1961).[4]

Moreover, there can be no argument that this case meets and overcomes the initial obstacles which are applied to requests for declaratory judgments. Declaratory relief may *not* be accorded in any of the following circumstances: (1) to determine moot questions; (2) to issue advisory opinions; or (3) if the legislature has provided another statutory remedy *specially* for the case at hand: Kariher's Petition (No. 1), 284 Pa. 455, 467-72, 131 Atl. 265, 269-71 (1925). Additionally, there must be a "real controversy" or the "ripening seed" of a controversy, and all parties must be before the court. See, e.g., Johnson Estate, supra, 403 Pa. 488-89, 171 A. 2d at 524 (1961); Kariher's Petition (No. 1), supra, 284 Pa. 471, 131 Atl. at 271. See generally, Amram, Declaratory Judgments, 41 Pa.B.Ass'n.Q. 384, 389 (1970).

The instant case satisfies all of the above criteria. Contrary to Dow's assertions, the case is not moot, Dow is still claiming that the trust did commit to a binding contract with Dow and that Dow is entitled to the benefit of the bargain.

Glenmede is not asking for an advisory opinion; rather its seeks a determination of legal relationships and the meaning of a particular written instrument in the context of the present case. No other statutory remedy has been specially provided for this case, and all necessary parties are before the court. That there is a "real controversy" is indicated by Dow's aborted attempt to have many of the same issues adjudicated by the United States District Court for the Eastern District of Pennsylvania.

Obviously, it is not enough that the present case

merely does not violate any of the limitations on the exercise of declaratory judgment jurisdiction, since this court's power to act is discretionary. See Friestad v. Travelers Indemnity Co., supra, 452 Pa. at 425, 306 A. 2d at 299; Johnson Estate, supra, 403 Pa. at 488, 171 A. 2d at 524. But this is a case where it seems fitting that the court should exercise that discretion.

## C. SPECIAL NEED FOR EXERCISE OF THIS COURT'S JURISDICTION

The primary reason for this court to accept and decide the "whole case" is because of this court's recognized expertise in matters of trust administration and fiduciary law. Glenmede's petition, insofar as it seeks a declaratory judgment, raises a number of complex, important and unresolved issues of state law.

One is a problem of statutory construction and codification. Prior to 1945, whenever a fiduciary received a higher offer before closing on the sale of property, regardless of whether an otherwise binding agreement of sale had been made, the fiduciary was obliged to abrogate the earlier contract and accept the higher offer. This common law rule was revoked by the Act of May 24, 1945.[5] But, when the new Probate, Estates and Fiduciary Code was adopted in 1972, 20 Pa.C.S.A. §3360, the 1945 act rules as applied to *trustees* were omitted, and the 1945 act itself was specifically repealed.[6]

Dow has suggested that this omission does not affect the trustee's obligations, and that the 1945 statute is still controlling. While such an interpretation is a possibility, an opposite interpretation is equally appropriate. Without analyzing the merits at this time, this court, more than any other judicial

forum, *either state or federal*, possesses the expertise necessary to decide fairly this important and unresolved question.

A related problem which leads this court to exercise its discretion and hear Glenmede's prayer for declaratory judgment concerns the obligation of a fiduciary when presented with an offer more favorable to the trust, as in the instant case. The issue revolves around the legal implications of the language set forth in paragraph 11 of Glenmede's petition making Glenmede's written conditional commitment of August 16, 1974, to Dow "subject to such obligations as may be imposed upon the trustee pursuant to the laws of the Commonwealth of Pennsylvania respecting fiduciaries."

Dow has contended that the language in question does not raise any issues, a contention which Glenmede disputes. The language is not merely a choice of governing law reference; rather it concerns the effect of state law in a *specific fact situation* as that effect may serve to abrogate any obligation under the special circumstances which were present and alluded to by Glenmede. Although analogous cases have been decided in Pennsylvania, see, e.g., Binenstock Trust, 410 Pa. 425, 190 A. 2d 288 (1963), this precise question has not been passed upon by a Pennsylvania court. As noted above, this court possesses unique and special qualifications to decide such issues.

## D.  THIS COURT ALONE HAS ALL THE NECESSARY PARTIES BEFORE IT.

A second reason this court should now hear and determine the remaining issues presented by the petition is because only this court can afford full and complete relief in the premises. All the neces-

sary parties are before this court. This is not the case in Dow's Federal Court action because the Attorney General of Pennsylvania is not a party there, yet he is an indispensable and necessary party to all proceedings involving the administration of charitable trusts. His interests in and duty to scrutinize their operation is recognized as a matter of both state and Federal law, e.g., Com. v. Brown, 260 F. Supp. 323, 337-38 (E.D. Pa. 1966), and cases cited therein; Coleman Estate, 456 Pa. 163, 168, 317 A. 2d 631, 634 (1974). Complete relief in a proceeding involving a charitable trust cannot be given without his participation: Pruner's Estate, 390 Pa. 529, 533, 136 A. 2d 107, 110 (1957). Moreover, the Attorney General would not be bound by any decree entered in an action to which he was not a party: e.g., Little Estate, 403 Pa. 534, 539, 170 A. 2d 106, 109 (1961); Garrison's Estate, 391 Pa. 234, 237-39, 137 A. 2d 321, 323-24 (1958).

A declaratory judgment proceeding is available to determine the validity and enforceability of contractual provisions. See Southeastern Pennsylvania Transportation Authority v. Philadelphia Transportation Co., 419 Pa. 471, 472-73, 214 A. 2d 632, 633 (1965). See also Farmer v. Riddle, 126 So. 2d 228, 231 (Ala. 1961);[7] McCarl v. Fernberg, 256 Iowa 93, 126 N.W. 2d 427, 428 (1964); DiMare v. Capaldi, 336 Mass. 497, 146 N.E. 2d 517, 520 (1957). The fact that one of the issues in the case may concern the propriety of awarding money damages in no way affects the viability of the declaratory proceeding. In fact, numerous petitions requesting a declaratory judgment concerning the terms of a contract, as well as money damages, have been upheld under the uniform act. See, e.g., Farmer v. Riddle, supra, 126 So. 2d at 231; Heath v. Central Truck Lines, Inc., 195 So. 2d 588, 589

(Fla. 1967); McCarl v. Fernberg, *supra*, 126 N.W. 2d at 428; DiMare v. Capaldi, *supra*, 146 N.E. 2d at 520; F. Rosenberg Elevator Co. v. Goll, 18 Wis. 2d 355, 118 N.W. 2d 858, 862 (1963).

## E. THIS COURT HAS COMPLETE AND ULTIMATE AUTHORITY.

Dow has asserted that its claims are now essentially tort claims for compensatory and punitive damages for: (1) violations of the Federal securities laws; (2) tortious interference with Dow's contract with Glenmede and General Crude; and (3) breach of contract.

The Pennsylvania Legislature has now made it clear that this court has jurisdiction to decide all matters involved in a case which is properly before it pursuant to its mandatory jurisdiction under 20 Pa.C.S.A. §711(3). Pursuant to the Act of July 9, 1976, P.L. 551, subsection 3 was added to section 712 of Title 20. As amended, this section now provides that the jurisdiction of the court of common pleas may be exercised through the orphans' court division as to matters which are not specifically within the jurisdiction of the orphans' court division but which arise in a case where there is a "substantial question" concerning a matter which is within the mandatory jurisdiction of this court.[8]

The Joint State Government Commission, in its comment to this legislation, described the purpose of the new section as follows:"The addition of new paragraph (3) is intended to avoid multiple actions in different divisions in a case involving two or more questions, one of which would ordinarily be decided by the orphans' court division and the other by the trial or family division . . ."

It is clear that Dow has the burden of proving its

right to any damages. See generally, 3 Partridge-Remick, Pa. O.C. Practice, §22.02, 132-33 (1962).

Whether Dow bases its claims for damages on breach of contract or on tort makes no difference now as to the jurisdiction of this court. While claims presented at the audit of a fiduciary's account are usually heard without the filing of pleadings, this court is hearing this issue with the pleadings in the original petition and answer before it. From these we know that Dow is seeking both compensatory and punitive damages.

"Exemplary or punitive damages are not allowable unless actual damage has been suffered; . . . The cases establish the basic principle, however, that exemplary damages are allowed in addition to compensatory damages only where there has been malice, fraud, oppression, or gross negligence, and the general rule is well established that where the injury suffered by the plaintiff has not been willfully or wantonly inflicted, only compensatory damages can be recovered." 11 P.L.E., 105, §14.

"Pennsylvania has adopted the rule of punitive damages as set forth in §908 of the Restatement of Torts and the comments thereunder. Section 908(1) provides: '"Punitive damages" are damages other than compensatory or nominal damages awarded against a person to punish him for his outrageous conduct'. Comment (b) to the above section states that 'Punitive damages are awarded only for outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interests of others.'" Focht v. Rabada, 217 Pa. Superior Ct. 35, 38, 268 A. 2d 157 (1970).

At the same time, this court is well aware of the holding by our Supreme Court in Keystone Diesel Engine Co. v. Irwin, 411 Pa. 222, 191 A. 2d 376 (1963), that in an action of assumpsit for breach of

contract, loss of anticipated profits are not recoverable unless within the contemplation of the parties when the contract was made. And when the vendor has "acted in good faith," recovery by the vendee is "limited to the down-money or the value of other property delivered, and the necessary expenses incurred by him and required in such transactions." Kargiatly v. Provident Trust Co., 338 Pa. 358, 12 A. 2d 11 (1940).

As stated above, our jurisdiction in this matter is founded on section 711(3) of title 20 of the Pennsylvania Consolidated Statutes, "Decedents, Estates and Fiduciaries." In addition, under 20 Pa.C.S.A. §715, this court is given "all legal and equitable powers required for or incidental to the jurisdiction it exercises." It has often been stated that the orphans' court has the right and the duty to dispose of every facet of a case which is properly before it. In Dunwoody Estate, 56 D. & C. 2d 12, 30 (1971), Judge Saylor, writing for this court en banc, summarized the orphans' court jurisdiction as follows:

"'. . . Within its appointed orbit its jurisdiction is exclusive, and therefore necessarily as extensive as the demands of justice: Shollenberger's Appeal, 21 Pa. 337, 341 (1853). Its process is plastic, and its powers limited only by the necessities of the case, and by its duty to administer equity in accordance with established rules. It needs no other court to finish its work: Odd Fellow S. Bank's Appeal, 123 Pa. 356, 365 (1888). See Heinz's Estate, 313 Pa. 6 (1933). When its equitable jurisdiction is invoked, it is sufficient to embrace every relief necessary for a full disposition of the case because equity abhors multiplicity of suits: Winton's Appeal, 97 Pa. 385, 395 (1881). See also Mellinger's Estate, 334 Pa. 180 (1939).'"[9]

It should be stressed that as far as Glenmede's request for declaratory relief is concerned, there is no request for damages, or other non-declaratory relief. These issues have been injected by Dow, a respondent, in its counterclaim and new matter. To these charges, which are pressed jointly against Glenmede and IP, the latter party has filed a reply denying the charges but accepting the jurisdiction of this court. The distinction, if one is necessary, favors this court's exercise of its declaratory jurisdiction here. In La Rocca Trust, supra, a minor beneficiary sued in orphans' court to have the trustee file an account and make a distribution of trust income to the minor beneficiary. The trustee filed a complaint in equity seeking a reformation of the trust instrument. He also filed an answer to the orphans' court petition for citation, inter alia, challenging its jurisdiction, arguing that the court could not reform instruments.

". . . The question of the reformation of the instrument involved was brought into the present action by way of answer to the petition for a citation to compel the accounting and distribution. So too, the action in equity in the common pleas court was not filed until after the jurisdiction of the orphans' court had attached herein. The request for reformation was not an independent action in the orphans' court, but rather an incidental one. The *crucial test* in evaluating jurisdiction is the *relief requested by the initiating party.*" (Emphasis supplied.) 411 Pa. at 637, 192 A. 2d at 411.

Any suggestion that an orphans' court is somehow precluded or inherently unable to award monetary damages in a situation such as the present case is unacceptable. In numerous cases, prior to the

enactment of the 1945 act, when a trustee breached a contract with a third party concerning the disposition of a trust asset, the court awarded monetary damages where appropriate. See, e.g., Brown's Appeal, 68 Pa. 53 (1871); Alexanian v. Fidelity-Phila. Trust Co., 152 Pa. Superior Ct. 23, 26, 30 A. 2d 651, 653 (1943); Yost's Estate, 40 D. & C. 208, 211 (Northumberland County Orphans' Ct. 1940); Early's Estate, 24 Dist. R. 153 (Philadelphia County Orphans' Ct. 1915). The principle holds true today. See Plasterer Estate, 59 D. & C. 2d 51, 55-57 (Lebanon County Orphans' Ct. 1972); cf. Kargiatly v. Provident Trust Co., 338 Pa. 358, 359, 12 A. 2d 11, 12 (1940) (deposit returned, but no damages awarded). In fact, if an orphans' court has already assumed quasi in rem jurisdiction over a trust res, a court of common pleas may not hear a contract claim concerning that asset; the contract claim must be brought in the orphans' court. See Thomas v. Lancaster County National Bank, 14 Fiduc. Rep. 369, 371-72 (Lancaster County C.P. 1964); Horner v. First Pennsylvania Banking & Tr. Company, 412 Pa. 72, 194 A. 2d 335 (1963).

The instant case is analogous to Hoyt Estate, 52 D. & C. 2d 131 (Bucks County O.C. 1971). There, the executor of a decedent's estate sought court approval, with the effect of a judicial sale, of a proposed private sale of an estate asset (real estate) negotiated by him, so that the asset could be declared free and clear of an allegedly invalid contractual right of first refusal. The school holding the alleged option was made the respondent, and it questioned the jurisdiction of the orphans' court. That court reaffirmed the long-standing principle that the power to sell an asset of an estate or trust is an administrative power: "The issue proposed to be

litigated by the within petition certainly is concerned with and related to the 'administration and distribution . . .' of the within decedent's estate." Id. at 134. If there is doubt as to the propriety of the exercise of that power, the court held that the trustee should apply to the orphans' court for approval of the transaction so that it may have the effect of a *judicial sale.* See 20 Pa.C.S.A. §7133(16), §3353, formerly 20 P.S. §320.963.

". . . While the real problem of the validity of the option contract is incidental and collateral to the direct purpose of a section 543 proceeding, i.e., an adjudication of the propriety of the proposed sale and the desirability of a judicial sale to clear the title in the best interest of the administration and distribution of the estate, yet the collateral nature of that purpose does not preclude the availability of that remedy under the present law . . ." Id. at 139.

## F. STATE COURTS HAVE AUTHORITY TO ADJUDICATE QUESTIONS INVOLVING FEDERAL SECURITIES LAWS.

Further, the Pennsylvania Supreme Court has expressly authorized the courts of this Commonwealth to resolve issues under the Federal securities laws as they relate to questions of state law and policy: Davis v. Pennzoil, 438 Pa. 194, 209, 264 A. 2d 597, 605 (1970); accord, Jennings v. Boenning & Co., 482 F. 2d 1128, 1134 (3d Cir. 1973). Dow, therefore, cannot seek to deprive this court of jurisdiction by alleging that some of the ancillary issues concern securities issues not cognizable in an orphans' court proceeding.

## G. FACTUAL ISSUES DO NOT BAR DECLARATORY JUDGMENT AS A REMEDY.

A final issue needs to be laid to rest. The only other previous exception to the exercise of declaratory judgment jurisdiction was the existence of a "factual" question, the presence of which had been held to remove discretion in allowing a declaratory judgment action.

The Pennsylvania Supreme Court's recent decision in Liberty Mutual Insurance Co. v. S.G.S. Co., 456 Pa. 94, 318 A. 2d 906 (1974), carried the court liberalization of the Pennsylvania law of declaratory judgment in Friestad v. Travelers Indemnity Co., 452 Pa. 417, 306 A. 2d 295 (1973), to its logical conclusion and held that the Uniform Declaratory Judgments Act ". . . clearly anticipated the determination of factual disputes in declaratory judgment actions."[10]

Although Glenmede believes no relevant factual issues are present in this matter, the mere presence of such issues would in no way preclude this court from exercising its discretion to grant declaratory relief. Nothing can gainsay this court's expertise in matters of trust administration. All parties are entitled to the benefit of this court's opinion.

As Chief Justice Jones reiterated in Johnson Estate: ". . . 'One of the chief objectives which declaratory judgment procedure was aimed to accomplish was the furnishing of an expeditious remedy for the settlement of claims, which, in the words of the statute, "indicate imminent and inevitable litigation"—to settle controversies which, for some reason or other, could be determined more advantageously if settled promptly rather than at some future time when they would require adjudication.'" 403 Pa. at 488, 171 A. 2d at 524, quoting

from Eureka Casualty Co. v. Henderson, 371 Pa. 587, 592, 92 A. 2d 551, 553 (1952) (Stern, *C.J.*).

For the reasons set forth above, we hold that we have jurisdiction to accept Glenmede's petition for a declaratory judgment, and to decide all issues raised by the pleadings, including those asserted by respondent Dow in its counterclaim and new matter.

For the reasons which are fully set forth in our adjudication filed contemporaneously with this opinion, 5 D. & C. 3d 627 (1977) we now enter the following

## DECREE

1. All the parties who are legally involved as seller and prospective buyers in the sale by Glenmede Trust Company, Trustee of the Pew Memorial Trust, of its 5,564,357 shares of the common stock of General Crude Oil Company, are before the court.

2. On August 16, 1974, and thereafter, Glenmede Trust Company, as sole trustee of Pew Memorial Trust, had the supreme fiduciary duty and responsibility of obtaining the best available offer in the sale of its General Crude stock which was a major asset of this charitable trust.

3. The August 16, 1974, resolution of the Glenmede board of directors and the ensuing "subject to" letter were neither a binding nor enforceable acceptance of Dow Chemical Company's bid of $45 per share of Dow's stock for every share of General Crude stock.

4. The offer of $50 per share by International Paper Company on August 16, 1974, is and was the best offer available to the trustee for the sale of its common shares of General Crude stock.

5. This court's order of November 25, 1974, approving Glenmede's sale of its General Crude stock to IP at $50 per share, pursuant to a stipulation in which the Attorney General of Pennsylvania joined, is now and hereby confirmed.

6. The actions of the officers and board of directors of Glenmede Trust Company in all matters pertaining to the affairs of Pew Memorial Trust are the actions of trustees of a charitable trust.

7. No enforceable rights accrued to Dow by reason of Glenmede Trust Company's August 16, 1974, letter, and there is no liability to Dow Chemical Company on the part of Glenmede Trust Company for the action of the Glenmede Trust Company's board of directors in subsequently, on September 4, 1974, revoking its resolution of August 16, 1974, and on the same day seeking this court's approval of the proposed sale of its General Crude stock to International Paper Company.

8. Dow Chemical Company's claim for damages against Glenmede Trust Company and International Paper Company, either individually or jointly, based on alleged breach of contract and tortious interference and conspiracy, is totally devoid of merit and is dismissed.

9. International Paper Company is entitled to payment from Dow Chemical Company in reimbursement of its costs necessarily incurred in defense of Dow Chemical Company's charges of tortious interference and conspiracy, and judgment is now entered in favor of International Paper Company and against Dow Chemical Company for said costs.

1. This responsibility is shared with the Attorney General of Pennsylvania. See Pruner Estate, 390 Pa. 529, 531-32, 136 A. 2d 107, 109 (1957).

2. Although Wilson concerned a testamentary trust, in 1956, this court was given, by statute, the same power with respect to inter vivos trusts in Philadelphia. See Act of February 10, 1956, P.L. [1955-56] 1022, thereby bringing the Orphans' Court of Philadelphia into line with the other orphans' courts of the Commonwealth, which had assumed exclusive jurisdiction over inter vivos trusts in the Orphans' Court Act of August 10, 1951, P.L. [1951-52] 1163. The present day act is contained in 20 Pa.C.S.A. §711(3) quoted above.

3. The last paragraph was quoted with approval in Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456, 462 (1939).

4. Realizing the usefulness of declaratory judgments in trust and estate matters, an exception to the extraordinary remedy rule had been created in orphans' court practice when a tax issue was involved, see, e.g., Carter Estate, 435 Pa. 492, 495-96, 257 A. 2d 843, 845 (1969), and courts tended to give what was a "tax issue" an expansive reading. See, e.g., Purnell Estate, 424 Pa. 263, 265, 226 A. 2d 488, 489 (1967) (orphans' court declaratory determination of existence of debtor/creditor relationship between life tenant and remainderman affirmed); Kerr Estate, 37 D. & C. 2d 332, 338-42 (York County Orphans' Ct. 1965) (declaratory judgment on interpretation of rule voiding charitable gifts made within 30 days of death of donor). See generally, Nash, The Practical Use of Declaratory Judgments in the Orphans' Court, 41 Pa. B. Ass'n Q. 392 (1970).

5. Act of May 24, 1945, P.L. 944, sec. 1, 20 P.S. §818 (repealed July 1, 1972).

6. Act of June 30, 1972, P.L. 508, sec. 3.

7. Because the Uniform Declaratory Judgments Act is a uniform act, consideration can and must, under the terms of the act itself, 12 P.S. §845, be given to decisions in other jurisdictions where the uniform act has also been enacted.

8. "§712. Nonmandatory exercise of jurisdiction through orphans' court division.

"The jurisdiction of the court of common pleas over the following may be exercised through either its orphans' court division or other appropriate division:

". . .

"(3) Other Matters. The disposition of any case where there are substantial questions concerning matters enumerated in section 711 (relating to mandatory exercise of jurisdiction through orphans' court division in general) and also matters not enumerated in that section."

9. §711. ". . . [T]he jurisdiction of the court of common pleas over the following shall be exercised through its orphans' court division:

"(3) Inter vivos trusts. The administration and distribution of the real and personal property of inter vivos trusts . . ."

10. The following cases were thereby overruled: Loftus v. Carbondale, 435 Pa. 288, 256 A. 2d 799 (1969); Keystone Ins. Co. v. Warehousing & Equip. Corp., 402 Pa. 318, 165 A. 2d 608 (1960). See also C. H. Pitt v. Ins. Co. of N.A., 435 Pa. 381, 385, 257 A. 2d 857 (1969); Mains v. Fulton, 423 Pa. 520, 523, 224 A. 2d 195 (1966); McWilliams v. McCabe, 406 Pa. 644, 653-54, 179 A. 2d 222 (1962); Stofflet & Tillotson v. Chester Housing Auth., 346 Pa. 574, 578, 31 A. 2d 274 (1943); Ladner v. Siegel, 294 Pa. 360, 368, 144 Atl. 271 (1928).

The court rested its holding primarily on legislative history, as well as section 9 of the uniform act, which provides: "When a proceeding under this act involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending." Act of June 18, 1923, supra, 12 P.S. §839.